Colcock, J.
dissenting. — A sense of duty impels ipe to state my reasons for differing in opinion from my breth~ ren in this case. When 1 reflect that the act has been in operation for eighty years, and that the practice under it, on the point now before the court, has been uniform and uninterrupted, I cannot but think, that the law is now established, even although the act were susceptible of the construction contended for. If eighty years is not a sufficient length of times to fix the meaning of an act, there can be no security to the citizens of the community. Will it not belter comport with that security, to continue in the old construction of the act, than now to depart from it ? Surely authority on this' subject will not be required. Reason unaided by authority points out the great importance of uniformity in the law. Why do we daily refer to adjudged cases to determine between conflicting opinions as to the common law i Why at this very court have we said we were never satisfied with the case of Purvis vs. Robinson, ante, 321, but, that as it had been the law forthirty years, wethought it best not to disturb *357 it. is it not obvious tliat the same course ought tobe pursued in ihe construction of this statute? But I will now endeavour to shew that this act is complete in all its parts, that it forms an entire system on the subject, and is notliable to the objections which have been raised against it by the counsel. In a proceeding of this kind it is conceded that it is proper to provide a mean whereby the absent debtor may obtain that justice in court, which is administered to all. While his goods are liable to be seized to satisfy a just demand it is proper that he should be permitted to defend himself against unjust claims. The act provides first, that the goods of any person or persons whatsoever, residing or being without the limits of the (then) province, shall be attached in the hands of any person having possession of them, or wheresoever they may be found. It then requires the plaintiff to file his declaration, to swear to his demand and to serve a rule to plead on the wife or attorneys of the absent debtor, if he have one within the state fixing a time within which he shall plead or make his defence; and ifhc have no wife or attorney, to advertise-such rule once every three months during a year and a day; and if he do not appear within that time, judgment is toberendered against him. Then follows the clause which provides that the attachment may be dissolved within the year and day, “by entering bail to answer the action and pay the condemnation. Here then is a complete system, providing a remedy on the one hand for the plaintiff, and on the other, the means of defence for the defendant, which is all that the law is expected to do by any proceeding whatever; but to that is superadded a privilege, which is not allowed in ordinary cases, namely, permitting the defendant (in the very next clause) to disprove the debt, at any time within two years, and to recover damages against the plaintiff for any unjust vexation, with treble costs. But it is said that the eighth clause of the act only authorizes the dissolution of the attachment by an attorney, the debtor himself being absent, and that he is to be permitted to dissolve jt himself by entering special bail. The clause is in the fed- *358 lowing words : “ if at any tune within the year and day, any person shall appear as the attorney to the absent debtor and will putin bail to answer the. action and pay the condemnation, that then in such case the attachment shall be dissolved, and the monies, goods, chattels, debts and books of accounts, so attached, shall be forthwith paid and delivered to the person and persons appearing and giyiug bail as aforesaid, and such person and his security shall be obliged to satisfy and be liable to pay all such sum and sums of money, ás the plaintiff in the attachment shall obtain judgment for against the absent debtor, together ith all such costs and charges as shall be taxed by the chiefjustiec aforesaid.” Now, it is a well known rule that wherever one is authorized to do an act by attorney it implies an authority to do it himself, and for this it would be sufficient to rely on the trite maxim, qmfacitpcr alium, facitper sec. But the words “ absent debtor,” and “ defendant” are controvertable terms in the act, and, therefore, the words, “ absent debtor,” in this clause, do not necessarily convey the idea of absence. The object of the law is clear, if the debtor doesnot intend to return within the year and day'he may appoint an attorney to dissolve the attachment, or the attorney who is left to transact his business, may doso for him; but if he return within that time he himself may give the bail required by the act, and thereby dissolve the attachment; and this is the construction which the act has always received. But it is said that this plain and obvious meaning of the legislature is to be abandoned, and it is to be inferred that they intended to permit the absent debtor on bis return to dissolve the attachment by entering special bail. To support this construction it is said, that such was the mode of proceeding by the custom of London, from whence we derive all our knowledge on the subject. Nay, it was even said, we did not know the meaning of the term “ attachment,” as a proceeding to bring a party into court, except by a reference to the praciice under that custom. Blackstone, (3rd vol. p. 280,) in treating of processes, says, “if the defendant disobeys this *359 verbal monition, the nest proceeding is by writ of attachment or pone. This is a writ, not issuing out of chancery but out of the court of common pleas, and thereby the sheriff is commanded to attach him by taking gage, that is, certain of his goods which he shall forfeit, if he doth liot appear; and in some' cases, this is the first and immediate process.” Wo are not then obliged to the custom of London, for the first information as to this mode of proceeding. But suppose by the custom of London, the absent debtor is permitted to dissolve the attachment by entering special bail, does it. follow, that we are obliged to pursue the same course? Can 4t be believed that the legislature when providing a remedy by this mode oí proceeding,'would have failed to do so by express provision, if they had deemed it adviseable? Could ihey suppose that any deficiencies in their act would be supplied by the custom of London? Was it operative here? fhey were not legislating on a common law subject. But to meet these objections which so forceably present themsehes to the'miud, it is said, that the act implies this right in the defendant by speaking of his " appearance,” which, it is said, is a technical expression, meaning the giving of special bail. But there are some serious objections to this strained construction of the act. Although the books of practice do say that “appearance” means the entering of special bail, they do not mean that an appearance cannot be entered without special bail. Where bail below has been required, it is demandable, but it certainly was never heard of that an appearance cannot foe entered on a common capias, where no bail has been required, without special bail. When was special bail ever demanded in a case when there was no áffidavit'to hold to bail? The word appearance then, has no such technical meaning as is necessary to support the argument. Our acts of assembly, as well as our rules of court, recognize the idea of appearance without any bail. But a still more obvious objection is this, the act does not speak of the appearance, in terms, the absent debtor until ■ the judgment shall have been *360 rendered against him. In the ninth clause, it says, “ in case any absent person, against whom an attachment is issued by virtue of this act shall.appear within two years.” Now whatever may be the technical meaning of appearance, this clause could never have contemplated the entering of special bail, for it is introduced to give a remedy where the defendant has been unjustly harrassed by the proceeding, and is after judgment ; and it would shock our technical notions to talk of special bail after judgment. In the second clause of the act, when the rule to plead is ordered, the technical word “ appear” is not used. The words are t£ ordering when such absent debtor shall plead or make his defence.” Now we certainly often see mere pleading and making defence without entering special bail. The latter part of the clause speaks of his non-appearance, but 1 shall not stop to shew that that cannot technically give a right to enter special bail. Why, I ask, if the legislature intended that the attachment should be dissolved by the absent debtor’s entering special bail, did they not make an . express provision for it, and extend the power to his attorney also? The legislature of Pennsylvania have thought it necessary to do so, although it is the custom of London. (See Sergeant's Law of Attachment p. 7.) And our legislature in the act of 1785, relating to domestic attachments have thought proper to say that “ goods taken under such attachments shall be repleviable by appearance and putting in special bail, if by the court ruled so to do; or by giving bond with good security to the sheriff or other officer serving the same to “ abide by and perform the order and judgment of the court.” Et is said, when there is ambiguity in a statute we must refer to the law as it stood before, to see what is meant. Rut, I ask, does every difference constitute an ambiguity.'' If so, no altera* tion could take place. If a statute cannot b,e carried into operation from any apparent ambiguity, we may certainly endeavor to discover the meaning of the legislature by looking to the old law. If we want to know the meaning of *361 special bail in a statute, we might refer to the common law. But to use this rule to introduce into the law an important matter which has been omitted, is not to construe but to legislate. If any stress be laid on the use of the words, “ special bail” in the law of domestic attachments, as an authority to introduce it into the law of foreign attachment, I would remark, that it is only necessary to look into the act to see, that he who drafted it has confounded all the distinctions of the common law as to bail, and that it is required only where the court shall order it, and may, therefore, be considered as an additional security to that which may be given to the sheriff or other officer levying the attachment. The word is used in some of our decisions concerning domestic attachments, but never in its common law meaning, but always in reference to the act itself, which provides for a special bail of its own, and generally in this state as meaning bail above. But let it be granted that there are no means by which an absent debtor in a foreign attachment can dissolve the attachment by entering special bail. Have not the legislature a a right so to make the law? The argument was introduced with some observations on the severity of the law, that it operated cruelly on honest men, that a man could not put his foot beyond the limits of the state without being subjeetto the attack of an ill-natured creditor. If these observations were correct, still they would not weigh with judges who are to enforce, not to make, law. Time does not permit me to enter much at large into this part Of the subject, but 1 shall endeavour briefly to show that it cannot produce any bad effect on a prudent man; and it is not required of the law to protect men from their own folly. The ninth clause provides that if one going out of the state will give a months public jnqtice of such intention, he shall not be subjected to the provisions of the act. His goods cannot be attached for any debt then due, and every man of business, when leaving the state, should appoint an attorney. With these gua'-'K how can a prudent man be injured? If his property be atic-.ied for *362 any debt due after he leaves the state, his attorney may give the security required for him, and his goods and all his funds are a counter security to him. But it is said, suppose the debts amount to more than his stock in trade, and his whole capital. The answer is, he is a bankrupt, and the law is not in fault. If a man will go so far beyond his depth, it is not the fault of the law if he sinks. Such extravagant speculation should certainly never be encouraged; it is gambling at the public expense Again, it was said, that one or two of the most active creditors might get the whole of his property. And what is the remedy proposed;' Suffer him to enter special bail, dissolve the attachment, get the goods into his possession and give them to two or three other creditors whom he may prefer or who may not have attached; and that this is often done, no man of business can doubt. Indeed it is the only way by which the individual can go on. If it should be urged that all creditors should come in in equal degree for the effects of a bankrupt, I will readily acceed; and an amendment of the law in this particular would be highly proper and universally approved of; but that justice among the creditors is not as well effected by the decision in this case as by the former operation of the act admits of no doubt in my mind; for the late occurrencies in the commercial world show that it is at last but a .contest among creditors wife, shall get the advantage.
Petigru and Harper for the motion.
King contra.